UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, | ) | Docket No. 5:24-CR-79-D-1 |
| v. | ) | |
| DEMARKEE RAYHEEM MIDGETTE, *Defendant*. | ) | |

*******************************

WEDNESDAY, MARCH 18, 2026
TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JAMES C. DEVER III
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

Jaren E. Kelly, Esquire
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
(919) 856-4092 | jaren.kelly@usdoj.gov

On Behalf of the Defendant:

Kelly Margolis Dagger, Esquire
Ellis & Winters, LLP
P.O. Box 33550
Raleigh, North Carolina 27636
(919) 573-1292 | kelly.dagger@elliswinters.com

JENNIFER C. CARROLL, RMR, CRR, CRC
Official Court Reporter
United States District Court
Raleigh, North Carolina
Stenotype with computer-aided transcription

Wednesday, March 18, 2026, at 10:36 a.m.

08:57:22 **P R O C E E D I N G S**

10:36:37 THE COURT: We'll next take up the sentencing of
10:36:39 Mr. Midgette.

10:36:58 MR. KELLY: Good morning, Your Honor.

10:36:59 THE COURT: Good morning.

10:42:41 (Defendant is escorted into the courtroom.)

10:43:04 THE COURT: Good morning, Ms. Dagger. Are you and
10:43:06 Mr. Midgette ready to proceed?

10:43:07 MS. DAGGER: Yes, Your Honor.

10:43:08 THE COURT: And good morning, Mr. Kelly. Is the
10:43:09 United States ready?

10:43:10 MR. KELLY: Yes, we are, Your Honor.

10:43:11 THE COURT: At this time I would ask Mr. Midgette
10:43:13 be sworn or affirmed.

10:43:16 (The defendant is administered the oath.)

10:43:23 THE COURT: Sir, do you understand that having
10:43:24 been sworn, that your answers to my questions are subject
10:43:27 to the penalty of perjury and if you were to lie to me, you
10:43:29 could be prosecuted for perjury or for making a false
10:43:32 statement?

10:43:32 THE DEFENDANT: Yes, sir.

10:43:33 THE COURT: Have you taken any kind of medicine or
10:43:35 any other substance in the last 48 hours that affects your
10:43:38 ability to hear and understand this proceeding?

10:43:40 THE DEFENDANT: No, sir.
10:43:41 THE COURT: Do you know why you're here today?
10:43:42 THE DEFENDANT: Yes, sir.
10:43:43 THE COURT: Ms. Dagger, do you have any reason to doubt Mr. Midgette's competence to go forward today?
10:43:48 MS. DAGGER: No, Your Honor.
10:43:48 THE COURT: Does the United States have any reason to doubt the defendant's competence to go forward today?
10:43:52 MR. KELLY: No, Your Honor.
10:43:52 THE COURT: Based on the defendant's answers to my questions, my observations of him, and the answers from counsel, I find that he is competent.
10:43:57 Sir, you're here today having been convicted at trial of three charges. The first charge is possession of a firearm by a felon; the second charge is possession with intent to distribute 40 grams or more of fentanyl, 50 grams or more of methamphetamine, and a quantity of cocaine; and the third charge is possession of a firearm in furtherance of a drug trafficking crime.
10:44:17 The sentencing guidelines are no longer mandatory; they're advisory. Nevertheless, I'm to take into account the now-advisory guidelines. I do this by initially making findings of fact and calculating an advisory guideline range. I'll then consider any motion that might be made that might change that. I'll then consider all arguments

that your lawyer makes under 18 U.S.C. Section 3553(a), any statement you would like to make, the arguments of the assistant United States attorney, and any victim allocution. And then I'll determine your sentence and I'll announce it here in court today. And that will be the process we'll follow.

Ms. Dagger, did you receive a copy of the revised presentence report?

MS. DAGGER: Yes, Your Honor.

THE COURT: And, Mr. Midgette, did you speak with your lawyer, Ms. Dagger, about that report, sir?

THE DEFENDANT: Yes, sir.

THE COURT: At this time the Court directs that the report be placed in the record until seal.

In accordance with Rule 32 of the Federal Rules of Criminal Procedure, the Court accepts as accurate the presentence report except as to matters in dispute as set forth in the addendum. I have reviewed the entire report, including the addendum. The addendum indicates there's no objections to the report from either the Government or the defense.

Is it still the case, no objections to the report from the defense?

MS. DAGGER: That's correct, Your Honor.

THE COURT: Is that correct, Mr. Midgette?

THE DEFENDANT: Yes, sir.

THE COURT: No objections from the United States; correct?

MR. KELLY: That's correct, Your Honor.

THE COURT: For purposes of Booker and its progeny, the total offense level is 32, the criminal history category is V, the advisory guideline range on Counts 1 and 2 is 188 to 235 months. On Count 3, it's 60 months. Of course, Count 1 is capped at 180 months.

Does the defense object to that advisory guideline range?

MS. DAGGER: No, Your Honor.

THE COURT: Does the United States object to that advisory guideline range?

MR. KELLY: No, Your Honor.

THE COURT: All right. I'll hear first from Ms. Dagger, then from Mr. Midgette, then from Mr. Kelly, and I'll give Ms. Dagger the last word.

Ms. Dagger --

And you can have a seat while your lawyer speaks on your behalf, sir.

Ms. Dagger.

MS. DAGGER: Thank you, Your Honor.

Mr. Midgette is almost 30 years old today. He will be 30 years old later this month. He's here in an

adult body and he's certainly reached an adult age. But we would ask the Court to take into account, as I articulated in the written sentencing memorandum, that his intellectual limitations and his related, I think, mental health issues make him different from another almost 30-year-old who comes before Your Honor.

The offense conduct is serious. There's nothing that Mr. Midgette can do here today to dispute that. He was found guilty after a trial. The offense did involve methamphetamine with a high level of purity. It did involve fentanyl. There were two firearms. And as the Court saw in the presentence report, there was a failure to stop and then comply with directives from law enforcement.

Mr. Midgette did go to trial. I didn't represent him at that time and, of course, the case was not tried before Your Honor. But I understand -- and he understands -- that he's preserved all of the rights he has by going to trial. Specifically, though, with respect to the stage of the case where he is now, having been convicted of those things, he can't deny that those convictions are very serious.

We included with the sentencing memorandum an evaluation that was done of Mr. Midgette almost ten years ago now. And that evaluator both drew some conclusions about Mr. Midgette's intellectual limitations, concluding

that they were on the very, very low end of functioning for someone his age. But he also made a prediction about how Mr. Midgette might struggle in social situations. And Mr. Midgette's life over the last decade has proven that prediction true. His intellectual limitations, although they certainly do not provide an excuse for his conduct, and although he does know right from wrong, make him particularly susceptible to influence from people who are not his friends.

That's been a theme for him, having spoken to his mother about that and his family about that, that it's hard for someone in his situation to distinguish who is a friend and who is not a friend. And so although he doesn't offer any excuses for his criminal record or any excuses for why he's here today, he does ask the Court to take that into account. And I think it does point to comparatively lesser culpability for the same offense conduct than someone who had average or even above-average capacity to understand their actions and act differently.

Mr. Midgette has, in addition to those limitations, some mental health issues that he's dealt with since -- well, I say childhood, but really since birth. His mother identified those early on. And he is different and has lived a different life from his siblings. Notwithstanding those differences, his mother is still

supportive of him. His siblings are supportive of him. They hope he can do better. They know he faces a very serious sentence today.

The same things that I've described to Your Honor as -- I call them mitigating factors. Mr. Midgette's limitations would also, I think, naturally suggest to the Court that there's a need for incapacitation. There's a need to protect the public from this person who has a reduced ability to do the right thing, if you can put it that way. And I'd concede that.

As I said in the sentencing memorandum, a mandatory minimum sentence of 180 months will provide very significant incapacitation. It will be the first effort at a sustained period of incarceration. Mr. Midgette has been in and out of that revolving door in state court for his whole -- not even just his adult life but since he was a teenager. And it will be a test to determine whether the superior services available in the Bureau of Prisons can give him the skills that he needs to be successful.

Now, he needs both mental health treatment. He needs to learn strategies to cope with those things. I'm not a physician, of course, but, arguably, he may need to be medicated. His family believes that's the case. And he may be able to get those services and he may be able to get that support within the Bureau of Prisons. He can't change

his intellectual limitations, but, again, all of those years ago, as that evaluator predicted and the Social Security Administration determined, he is capable of doing productive work if it's within his limitations. So if it involves clear, short instructions and repetitive tasks, he ought to be able to be successful at that type of work.

The Bureau of Prisons, of course, offers extensive vocational and educational training and his hope would be that he's able, through that sentence that he's going to serve, to identify something that's appropriate to his skill set that will allow him to have employment when he's released at a level that he can maintain instead of at a level that people look at him and they assume physically, based on, you know, his age and his build, that this is an adult and he can do certain things that he may not be capable of doing.

So with all of those things together, Your Honor, Mr. Midgette submits to the Court that 180 months, which is the mandatory minimum sentence, and is a significant downward variance, is still the sentence that is sufficient but not greater than necessary to serve the purposes of sentencing.

He would also ask the Court -- in addition to recommending that vocational training/mental health treatment, he would ask the Court to recommend that he

serve his sentence at FCI Butner so that he can be close to his family and enjoy that continued social support. Thank you, Your Honor.

THE COURT: Thank you.

At this time I'll hear from Mr. Midgette, if you would like to make a statement, sir.

THE DEFENDANT: I want to say -- I want to apologize to the courtroom and also the community and my family. And I just ask that you just give me another chance to get back out and do what I need to do for my family and my kids and just be a better person in society.

THE COURT: Thank you, sir.

At this time I'll hear from Mr. Kelly on behalf of the United States.

MR. KELLY: Thank you, Your Honor.

Your Honor, the Government is asking for a top of the guideline sentence of 235 months. We believe that it would be sufficient but not greater than necessary to comply with the factors set out in 18 U.S.C. 3553(a).

THE COURT: So 235 plus 60?

MR. KELLY: Yes, Your Honor.

THE COURT: Is that the ask?

MR. KELLY: Yes, Your Honor.

And, Your Honor, I know that Your Honor was not the presiding judge at the trial, and I know that Your

Honor has gone through the PSR, but I think it's important just pointing out, you know, the different -- the facts of what happened here is that on this night, September 27th of 2023, Mr. Midgette, along with a juvenile, was initially trying to be stopped by the Fuquay-Varina Police Department for a headlight being out. Simple traffic infraction.

Officers initiate their lights. He takes off, takes them on an over-a-mile high-speed chase to where he goes into a residential area. Him and the juvenile, they jump out of the vehicle as the car was still traveling. He runs one way, the juvenile runs the other. As the officers are in pursuit of him, he jumps down a 15-foot retaining wall. Fortunately, the officers did not have to jump down that wall. They were able to spread out in order to essentially take him into custody.

They do a search of the vehicle that they just jumped out of. They found a bag that has two guns, has methamphetamine, has fentanyl, and also has cocaine.

Your Honor, I point those things out because they're consistent with the history -- his history and characteristics looking at his criminal conduct.

Your Honor, if we -- I point the Court to page 7 of the presentencing report, where, first, Your Honor, at the age of 16, this being his second conviction,

10:54:29 paragraph 18, he -- essentially, Your Honor, he is charged with shooting another individual. But the court at that point in time gave him some grace. And, Your Honor, they allowed him to plead to conspiracy to commit assault with a deadly -- inflicting injury as well as assault with a deadly weapon inflicting serious injury and also being given a handgun as a minor. Your Honor, he was sentenced to 23 to 40 months of custody. But he's -- that sentence is suspended for 36 months.

10:54:59 Your Honor, a year later, he ends up getting revoked because he goes out and he commits more criminal conduct, looking at paragraph 19, where he's also at that point a felon in possession of a firearm. Your Honor, that's a second conviction dealing with firearms.

10:55:15 Your Honor, we also take a look at paragraphs 20 and 21, where, in paragraph 20, he's alluding from -- eluding arrest with a motor vehicle with two aggravating factors that had also been pled down where he had been charged with a drug trafficking offense and possessing drug paraphernalia, resisting a public officer. And again, Your Honor, after being convicted of that, he gets on postrelease, engages in new conduct, as we see in paragraph 20, in possessing drug -- possessing drugs, Your Honor.

10:55:47 Now, Your Honor, I know you have this in front of

10:55:50 you, but the reason why I point it out, Your Honor, is that 10:55:53 the offense that takes place on that September night, Your 10:55:57 Honor, is a consensus of everything that he has been 10:56:00 convicted of in the past.

10:56:02 Your Honor, he's been given every opportunity. I 10:56:05 anticipate, Judge, that in those courtrooms with those 10:56:08 state superior court judges, his attorney said the exact 10:56:12 same thing: He has these issues, he has these things going 10:56:16 on, and he just needs help. He just needs help. He just 10:56:19 needs help. Well, Your Honor, here we are, more than a 10:56:22 decade later, and we're still dealing with the same type of 10:56:26 conduct.

10:56:28 Your Honor, I think it's important to point out 10:56:29 that that night, Mr. Midgette didn't take any type of 10:56:34 responsibility for it and alluded with the officers that he 10:56:37 was trying to blame the juvenile and that the reason why he 10:56:39 fled is because he didn't know the juvenile was missing. 10:56:43 But there's things in his phone that showed him with the 10:56:45 two bags, that end up finding the drug paraphernalia, the 10:56:48 guns, and the narcotics.

10:56:51 Your Honor, again, looking at his history and 10:56:54 conduct, Mr. Midgette needs to be put away. He needs -- 10:56:57 his conduct has shown that he needs -- that the public 10:57:01 needs to be protected from Mr. Midgette. Although, Your 10:57:04 Honor -- and I'm going to point the Court to page 26 on --

I mean, paragraph 26 on page 9. Although these are just arrests, they're not convictions. Your Honor, there are at least four other offenses that he's been charged with, with having firearms. At least two other offenses where he's been charged with contributing to the delinquency of a minor. At least two offenses where he's charged with drug trafficking. Albeit marijuana, but still, Your Honor, engaging in illegal sales of narcotics.

Your Honor, the Government believes that based on that history, that a sentencing of 235 at the top of the guidelines, along with the 60 months for the Count 3 of the indictment, Your Honor, sends a message not only to Mr. Midgette but also to the community that this type of conduct will not be tolerated. It promotes respect for the law. It deters not only him but as well as others who would think to do the exact type of conduct. And for that reason, Your Honor, we would ask for that sentence. Thank you.

THE COURT: Thank you.

Ms. Dagger, anything else?

MS. DAGGER: No, Your Honor. Thank you.

(Pause.)

THE COURT: All right. Mr. Midgette, the Court recognizes its obligation to impose a sentence sufficient but not greater than necessary to comply with the purposes

set forth in the statute. I have considered all arguments that your lawyer has made. I have considered the letters and the sentencing memo that your lawyer submitted. I have considered your statement, sir. I have considered the position of the United States. I have considered the advisory guideline range.

Among other things, I'm to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. The need for the sentence imposed to deter others who might choose to engage in the criminal behavior that brings you here. The need for the sentence imposed to provide you with needed educational or vocational training or medical care in the most effective manner. The need for the sentence imposed to protect the public from further crime by you. The statute lists numerous other factors. I've considered all of those factors although I won't mention each one individually.

As for the nature and circumstance of the offense, you did get convicted at trial of three charges: Possession of firearm by a felon; possession with intent to distribute 40 grams or more of fentanyl, 50 grams or more of methamphetamine and a quantity of cocaine; and

possession of firearm in furtherance of a drug trafficking crime.

As the report details, on September 27th, 2023, the Fuquay-Varina Police Department observed a vehicle you were driving with a headlight out. The officers initiated a traffic stop. The -- you did not yield. A pursuit ensued. You traveled at a high rate of speed, ran a stop sign, crossed into another lane on multiple occasions, reached a residential area about three miles from where the pursuit began. You slowed down while the vehicle was still moving; you and the juvenile in the car each jumped out. Officers chased and you were ultimately apprehended.

And officers then returned to the vehicle which was still in drive and had run off the road into a bush, and searched and seized the items in the abandoned car, including 1.27 grams of marijuana, three baggies of 39.36 grams of cocaine, a stolen .45 caliber pistol with six rounds of ammunition, a stolen 9mm pistol with a 17-round magazine attached and loaded with 14 rounds, 3.3 grams of fentanyl, 62.2 grams of ice, 39.06 grams of marijuana, 46.79 grams of fentanyl, 4.13 grams of THC wax, six dosage units of Suboxone, two cell phones, an additional cell phone was recovered outside the vehicle. A search of you revealed 4.27 grams of cocaine and $920 in currency. Furthermore, officers recovered $862 in U.S. currency in

the area of where you had fled.

You were uncooperative that night as reflected in paragraph 10, including pushing and threatening an officer. The officers did do a data extraction on the cell phones and an image recovered from one of the phones detected you with two firearms and a large amount of U.S. currency by your feet. Both bags recovered from your vehicle were depicted in the image. So, very serious conduct.

As for your history and characteristics, as your lawyer mentioned, you'll turn 30 next -- I think next Saturday is what the report says. Been a member of the Folk Nation gang. You did not finish high school yet. You, as your lawyer said, you know, have some intellectual limits and have mental health issues. But you also have a long history of substance abuse. The report said you started using marijuana at age 9 and worked your way up to using it seven times a day. Also taking Percocet.

You have some mental health issues that are reflected in paragraph 34. And I've taken those into account, but, you know, you certainly have the capacity even with intellectual limits and mental health issues to determine what to put into your body. And only -- and you have the capacity to reflect on your life as you are on the dawn of your 30th birthday to think, *Well, how is my life going? How is my life going having started using marijuana*

*at age 9 and now working my way up to using it seven times a day? How is my life going?*

It doesn't look like it's going very well from where I sit. Because I look at the report, and as the report indicates, you've interacted with the criminal justice system a lot beginning at age 16 with the attempted breaking and entering a motor vehicle and larceny. You get a suspended sentence, violate probation by doing -- by absconding. Conspiracy to commit assault with a deadly weapon inflicting serious injury, assault with a deadly weapon inflicting serious injury, giving a handgun to a minor. Again, get a suspended sentence, get probation, violate probation, have a number of disciplinary infractions while incarcerated.

Felon in possession of a firearm in paragraph 19. Get some time. So there's some time in where you have some time to reflect.

Eluding arrest with a motor vehicle with two aggravating factors in Lee County. Plead guilty. Again, fail on supervision.

Possession of a controlled substance, felony, paragraph 21. Maintaining a vehicle or place for a controlled substance. And plead guilty and get released on May 8th, 2023, the report says, and then these events happen in September of 2023.

So I'm not -- the prosecutor mentioned arrests. I never consider arrests, so I'm not considering arrests at all. The convictions, though, they're terrible. The behavior, it's terrible. I mean, I've read the letters. I mean, a friend wrote a letter. Your mother wrote a letter. One of your -- your sister wrote a letter. And, you know, your lawyer in the sentencing memo acknowledges, you know, that you've gotten a lot of leniency. But ultimately -- and then ultimately asks me to give you leniency, too, in the form of a downward variance to the mandatory minimum. That does not make any sense to me in light of the record.

I think you've gotten a lot of leniency and a lot of the leniency undoubtedly was an acknowledgement of issues that she raised, associated with, for example, intellectual limitation. But you're intelligent. And the mental health issues. But you -- you choose to do this. Right? I mean, it's -- you get out, from the conviction in paragraph 21, in May of 2023, and then what are you doing in September of 2023? You're doing the conduct that's reflected in Counts -- Counts 1, 2, and 3. And, you know, the report indicates sporadic work, at best. You know, you worked sporadically with your uncle's landscaping company in Durham, the report says in paragraph 39.

But certainly, the evidence I think reflected in the behavior on the evening of your arrest and the evidence

at trial shows you were an armed drug dealer, which is terrible. And again, it's a choice.

You know, you mention wanting to do better. You mention your children. The report says you have a 7, 5, and 3-year-old. Three children with three women. You're the only father they'll ever have. You're failing them. Every moment of their life, you have failed them. Only you will determine whether that failure continues with every breath you take between now and the day you die. But for now, their entire life you have failed them.

A father has one obligation: Be a good example to your children in how you live your life. That's it. That encompasses all of it. Being an armed drug dealer is the antithesis of being a good father. It says to the children, "I poison other people's children and I'm ready to shoot 'em if somebody gets in my way." That's what being an armed drug dealer says. Kids know everything. They know everything. They know what you do. They know what you prioritize.

And so I'll make recommendations for you. And you'll have a chance to get your G.E.D. You'll have a chance to learn skills. You're fortunate that your mother -- I mean, I read your sister's letter. Frankly, it seemed a little -- she wrote it, but she also -- I think that probably -- I think you've let her down some through

11:08:42 how you behave. No surprise.

11:08:45 And even -- you know, even with all of this, your 11:08:49 mother is still standing by you. Testament to her 11:08:54 character. But she can't pray you to a better place. She 11:08:57 can't hope you to a better place. The only way you get to 11:09:00 a better place is changing, basically, everything about 11:09:03 your life.

11:09:06 And again, as Ms. Dagger said -- right? -- your 11:09:09 intellectual functioning is what it is. Probably won't 11:09:12 change all of that much. But you certainly have the 11:09:14 capacity not to use marijuana seven times a day. Which 11:09:21 acts as a complete disinhibitor, and particularly with 11:09:24 somebody with mental health issues. It increases paranoia, 11:09:27 particularly with the strains of marijuana that are now 11:09:30 sold commercially.

11:09:35 Again, a person typically gets the life at which 11:09:39 they aim. And your aim so far as you approach your 30th 11:09:47 birthday has been unabashed, unabated, unrepentant 11:09:56 criminality. And a person reaps what he sows. You know 11:10:01 what that means. It means he harvests what he plants. A 11:10:06 person who aims up and plants a life of good choices, not 11:10:14 using drugs, working. You're able-bodied. You have the 11:10:20 capacity to make honest money. You don't have to be a drug 11:10:24 dealer. Don't have to be an armed drug dealer.

11:10:27 You have a supportive family. Your mother hasn't

given up on you, even though she would have every right to. And I can tell you, I sentence people when they're in their 50s, their mother is either dead or she's not here anymore. I can tell you how that works. There comes a time for every parent where they say, "I'm done. I'm not going to court to watch him go to prison again."

And I'm sure Ms. Dagger has told you. You know, another reality about this report that you've got to reflect on, you're not a criminal mastermind. You engage in all of this criminal behavior and you get caught. It's not like you have some master plan and say, "I'm going to be this really smart criminal and I'm going to live a criminal lifestyle and I'm going to then buy a little place in Florida and I retire when I'm 65." It's not how it works. Right? I mean, it's just not how it works.

And now you're federal. So if you get back out and get back at this, you won't go back to Lee County Superior Court or -- and again, there's sort of a potpourri of convictions across different counties in eastern North Carolina. You'll come to federal court. And I'm sure Ms. Dagger has told you, the sentences never get shorter around here. They never get shorter.

That's fair. Because this is serious behavior. Right? When you think about being a fentanyl dealer, that's a person who deals in death. Fentanyl is an

absolutely deadly drug. Now, the fentanyl you dealt, the report doesn't say, you know, you killed anybody. But that's just fortuity. Anybody who is dealing fentanyl, it's like, "What do I deal in? I deal in death. That's what I deal in." And ask the tens of thousands of families who have gotten to see a death certificate of a child, a son or daughter, a brother, a sister, a mom or dad, that says, "Cause of death: Fentanyl toxicity." Real clinical.

Part of what the physiology of fentanyl, the drug tells the brain to stop breathing and the brain does. And when it happens, the person dies. Typically with a similar -- typically with an act at the end of vomiting into their mouth as their last sentient reality upon this earth. Thank a fentanyl dealer for that. Somebody who prioritizes his own greed for the wellbeing of other human beings in society.

So incredibly serious conduct. It needs to be punished. You need to be incapacitated. You've gotten chance after chance after chance. And I decline your lawyer's invitation to give you yet another chance with the sentence that she advocated for.

Having fully considered the entire record in the case, the need to account for the serious criminal behavior, to promote respect for the law, to incapacitate this defendant who has gotten chance after chance and has

squandered those chances and has escalated his criminal behavior, notwithstanding so much grace from so many judges in the state system. Grace that I understand, but grace that you squandered. There will be no leniency today. There will be just punishment for you. There will be incapacitation. There will be general deterrence for any others who might think that this is a life to emulate. It is not.

Having fully considered the entire record in the case, it's the judgment of the Court that Demarkee Rayheem Midgette is hereby committed to the custody of Bureau of Prisons to be imprisoned for 180 months on Count 1, 228 months on Count 2 to run concurrent to Count 1, and 60 months consecutive on Count 3, for a total sentence of 288 months.

Minimum term of supervised release is statutorily required, and I have conducted an individualized assessment to assess the appropriate duration of supervised release. I have considered the factors set forth in 3583(c), the nature and circumstances of the offenses, the need to protect the public, the history and characteristics of this defendant.

Upon release from imprisonment, you shall be placed on supervised release for five years. This consists of three years on Count 1, five years on Counts 2 and 3 to

11:15:50 run concurrently. After carefully considering the provisions of 3583(d) and 3553(a), you shall comply with the mandatory and standard conditions of supervision adopted in the Eastern District of North Carolina as referenced in the governing standing order.

11:16:02 You shall comply with the following special conditions:

11:16:05 One, you shall participate as directed in a program approved by the probation office for the treatment of narcotic addiction, drug dependency, or alcohol dependency, which will include urinalysis testing and other drug detection measures, and may require residence or participation in a residential treatment facility.

11:16:18 Two, you shall participate in a program of mental health treatment as directed by the probation office.

11:16:22 Three, you shall participate in a vocational training program as directed by the probation office.

11:16:26 Four, you shall submit to a search at any time, with or without a warrant and by any law enforcement or probation officer, of your person, any property, house, residence, vehicles, papers, and effects upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant or by any probation officer or lawful discharge of the officer's supervision functions.

You shall support your dependents.

You shall cooperate in the collection of DNA as directed by the probation office.

You shall pay a special assessment of $300, which is due immediately.

I'm not going to impose a fine. After you pay your special assessment, any money you earn while incarcerated will go to support your dependents. They at least deserve your financial support. They deserve more than that.

You need to talk to your case manager when you get to the B.O.P. and get enrolled in the G.E.D. classes. If you get your G.E.D., you'll actually make more money when you're incarcerated and you'll then be eligible for other programs so that you can learn additional skills so that you can live in a law-abiding and productive way in whatever time you have remaining on this earth. And that you are released.

I recommend vocational/educational opportunities.

I recommend a mental health evaluation and treatment.

I recommend the most intensive substance abuse treatment available so that you can learn to live a life free of mind-altering substances.

I recommend Butner.

11:17:42 I do think I properly calculated the advisory guideline range, but I announce -- but even if I miscalculated, I would impose the same sentence as an alternative variant sentence under the authority of U.S. v. Gomez-Jimenez, 750 F.3d 370 (4th Cir. 2014), and U.S. v. Hargrove, 701 F.3d 156 (4th Cir. 2012). And this is the sentence sufficient but not greater than necessary for this defendant.

11:18:09 I've imposed a sentence different than what the lawyers asked for not because I didn't carefully consider all of their arguments. I did. I just simply balanced the 3553(a) factors differently than they each suggested that I balance them.

11:18:21 Mr. Midgette, you can appeal your conviction if you believe that your conviction was somehow unlawful or if there's some other fundamental defect in the proceeding. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think your sentence is contrary to law. With few exceptions, any notice of appeal must be filed within 14 days of the judgment being entered on the docket in your case.

11:18:40 If you're unable to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*. If you so request, the clerk of court will prepare and file a notice of appeal on your behalf.

Ms. Dagger, I think I made all of the recommendations you asked for. Did you want me to recommend anything else?

MS. DAGGER: No, Your Honor. Thank you.

THE COURT: Did you want me to address any other 3553(a) argument before we adjourn?

MS. DAGGER: No, Your Honor.

THE COURT: Does the United States want me to address any other argument or anything else before we adjourn?

MR. KELLY: No, Your Honor.

THE COURT: I thank counsel for their work here today. That will conclude the matter involving Mr. Midgette.

Good luck to you, sir.

(The proceedings concluded at 11:19 a.m.)

* * *

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF OFFICIAL REPORTER

I, Jennifer C. Carroll, RMR, CRR, CRC, Federal Official Court Reporter, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 1st day of June, 2026.

/s/ Jennifer C. Carroll
Jennifer C. Carroll, RMR, CRR, CRC
U.S. Official Court Reporter